**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SONIA V.[1],

                                     Plaintiff,

      v.                                      5:18-CV-22 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**MEMORANDUM-DECISION and ORDER**

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on July 23, 2014, alleging disability beginning July 7, 2014. (Administrative Transcript ("T") at 25, 196-210). Her application was denied initially on October 7, 2014. (T. 74-98). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 13, 2016. (T. 48-73). Plaintiff testified at the hearing with the assistance of an interpreter. (T. 50). Vocational Expert ("VE") Sharon Ringenberg also testified. (T. 65-73). On August 3, 2016, ALJ Roseanne M. Dummer found plaintiff was not disabled. (T. 19-47). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on November 2, 2017. (T. 1-8).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

   B.   **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. FACTS

As of the date of her administrative hearing, plaintiff was 50 years old. (T. 54, 196). She resided with her husband, and her adult son and daughter. (T. 56, 390). She

4

grew up in Puerto Rico, and completed both high school and college there, ultimately obtaining a bachelor's degree in social work. (T. 54-55, 390).

Plaintiff moved to the continental United States approximately twenty years ago. (T. 54). Her primary language was Spanish, and she used an interpreter at her administrative hearing. (T. 54-55). She testified that she had not taken any English classes since moving from Puerto Rico, and only understood "a little" basic English. (T. 54-55). Since moving, plaintiff had worked as a machine operator at an industrial laundry and a fabric manufacturer. (T. 259). Her most recent employment required her to move rolls of fabric through a perforation machine, and required occasionally lifting weights over twenty-five pounds. (T. 67). She left this position due to her physical impairments. (T. 63).

Plaintiff first received treatment for fibromyalgia symptoms in 2010. (T. 401). At the time, her physician though that it may be related to her anxiety and depression, and suggested that she address it with regular relaxation and a reduction in her work hours. (*Id*.) Her symptoms continued, and by October 2015, her physician noted multiple fibromyalgia tender points, decreased range of motion, and pain with movement of her wrists. (T. 524, 529, 625). She also regularly experienced neck, back and joint pain and migraine headaches. (T. 537, 547, 617). In August 2014, plaintiff began regular psychiatric counseling for depression. (T. 595).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 30-39). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by

5

plaintiff.

## IV. **THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through December 31, 2018, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 7, 2014. (T. 27). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: cervical spine degenerative disc disease; fibromyalgia; chronic pain syndrome (neck, back, and hands); headaches; and depressive disorder. (T. 28). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 28-29).

The ALJ found at step four of the analysis that plaintiff had the residual functional capacity ("RFC") to perform almost the full range of unskilled, light work. (T. 30-39). Specifically, he found that plaintiff could occasionally lift or carry up to twenty pounds, and could frequently lift or carry up to ten pounds; could sit six of eight hours during the workday, two hours at a time; could stand or walk six of eight hours during the workday, two hours at a time; could frequently reach, handle, finger, feel, and push/pull; could frequently use her feet to operate foot controls; could occasionally climb ramps or stairs, but could never climb ladders or scaffolds; could never work at unprotected heights; could occasionally kneel, crouch, and crawl; could frequently balance and stoop; and could frequently tolerate pulmonary irritants. (T. 30). He also found that plaintiff could tolerate loud noises such as heavy traffic, and could occasionally work with moving mechanical parts, operate a motor vehicle, work in

humidity/wetness, work in extreme cold/heat, and work with vibrations. (*Id.*) With regarding to plaintiff's mental RFC, the ALJ found that plaintiff could understand, remember, and carry out instructions commensurate with unskilled work; could sustain concentration and attention for two hour segments; could tolerate brief and superficial contact with co-workers, supervisors, and the general public; and was able to adapt to changes in the work setting involving simple, routine, unskilled work. (*Id.*)

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 96-4p. (*Id.*) Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record evidence. (T. 35). The ALJ then determined that plaintiff was capable of performing any of her past relevant work. (T. 40). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs that existed in significant numbers in the national economy. (T. 40-41). Therefore, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of July 7, 2014 through the date of her decision. (T. 41-42).

V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. The ALJ's physical RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 19-23) (Dkt. No. 9).

2. The ALJ erred in finding that plaintiff was able to communicate in English, rendering her hypothetical questions to the VE and the resulting disability determination unsupported by substantial evidence. (Pl.'s Br. at 24-26).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-21) (Dkt. No. 10). For the reasons stated below, the court concludes that the ALJ erred in evaluating the medical opinion evidence, and finds that her RFC determination was not supported by substantial evidence. As a result, the ALJ's ultimate finding that plaintiff was not disabled was tainted. Therefore, the court orders a remand for further administrative proceedings to properly assess the medical evidence related to plaintiff's impairments in connection with the Commissioner's RFC determination. On remand, the Commissioner should also reconsider the evidence regarding plaintiff's ability to communicate in English, and the potential impact on the number of jobs that may be available to plaintiff.

**DISCUSSION**

VI. **RFC EVALUATION/TREATING PHYSICIAN**

A. **Legal Standards**

1. **RFC**

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

**B. Application**

As described above, the ALJ found that plaintiff had the physical RFC to perform most unskilled, light work. (T. 16). In reaching this RFC determination, the ALJ gave "great weight" to the opinion of Dr. Lee A. Fischer, a non-examining consultant who reviewed plaintiff's medical records and responded to the ALJ's interrogatory in June 2016. (T. 39, 751-62). Dr. Fischer opined that plaintiff could frequently lift or carry up to ten pounds, and could occasionally lift or carry up to twenty pounds. (T. 757). He further opined that plaintiff could sit for up to two hours at one time, and up to six hours total during the workday, and could stand or walk for up to two hours without interruption, and up to six hours total during the workday. (T. 758). He also opined that plaintiff could frequently perform activities that required reaching, handling, fingering, feeling, and pushing or pulling, with either hand, and could frequently operate foot controls. (T. 759). In his opinion, plaintiff could frequently balance and stoop, and could occasionally kneel, crouch, crawl, and climb stairs and ramps, but could never

climb ladders or scaffolds or work around unprotected heights. (T. 760-61). Dr. Fischer also opined that plaintiff could occasionally work around moving mechanical parts and operate a motor vehicle, and could tolerate occasional exposure to humidity, wetness, vibrations and extreme temperatures and frequent exposure to dust, odors, gases and other pulmonary irritants. (T. 754). The ALJ's RFC determination largely mirrors Dr. Fischer's opinion. (T. 30).

Plaintiff contends that the ALJ assigned excessive weight to Dr. Fischer's opinion, even though the consulting physician did not examine plaintiff. An ALJ is entitled to rely on a non-examining consultant's opinion if it is consistent with the record evidence. *See Christy v. Comm'r of Soc. Sec.,* No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *see also Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) (collecting cases). In this case, the ALJ stated that he based his assignment of great weight to Dr. Fischer's opinion on the consultant's "longitudinal review of the record evidence," the consistency between the opinion and that record evidence, and the consultant's status as a medical expert "Board Certified in Family Medicine." (T. 39). However, a review of each these cited factors fails to demonstrate substantial evidence to support the ALJ's conclusion.

First, although Dr. Fischer reviewed the entirety of the medical record (T. 751, 755), his opinion appears based exclusively on his evaluation of the objective tests in the record, such as normal electromyography ("EMG") results, and an unremarkable

11

cervical spine MRI from 2015. (T. 679, 722-24, 755). Dr. Fischer relies on this objective clinical data to dismiss the findings of plaintiff's treating physicians, because their reports appeared to be "completed based on [plaintiff's] subject[ive] complaints." (T. 755). In assigning great weight to Dr. Fischer's opinion, the ALJ never reconciles the consulting physician's data-based approach with the fact that plaintiff's severe impairments include fibromyalgia and chronic pain. (T. 28). As recognized by the Second Circuit, "there are no objective tests which can conclusively confirm" these diseases. *See Green Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Therefore, the "absence of medically-acceptable clinical and laboratory diagnostic findings (beyond clinical signs and symptoms necessary for a diagnosis), is a legally-improper basis for rejecting medical source opinion" in such cases. *See Campbell v. Colvin*, No. 5:13-CV-451 (GLS/ESH), 2015 WL 73763, at *11-12 (N.D.N.Y. Jan. 6, 2015).

In addition, "[i]n stark contrast to the unremitting pain of which fibrositis[3] patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *See Green Younger*, 335 F.3d at 108-109 (quoting *Lisa v. Sec. of Dep't of Health and Human Svcs.*, 940 F.2d 40, 45 (2d Cir. 1991)). "Hence the absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Green Younger*, 335 F.3d

---

[3] The term "fibrositis" was historically used to describe symptoms resembling those of fibromyalgia. *See Alonso v. Berryhill*, No. 17-CV-4769 (DF), 2018 WL 4997512, at *2 n.9 (S.D.N.Y. Sept. 27, 2018) (citation omitted).

12

at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Therefore, the reliance by Dr. Fischer and the ALJ on the minimal physical findings during plaintiff's consultative examination[4] is misplaced, particularly in light of other, more numerous findings that plaintiff regularly experienced severe pain and limited range of motion during physical examinations. (T. 357, 361, 542, 620).

The ALJ also failed to explain how Dr. Fischer's status as board certified in Family Medicine justified the great weight assigned to his opinion. A medical source's "specialty" is a proper consideration in determining the weight to be given to opinion evidence. 20 C.F.R. § 416.927(c)(5). However, Dr. Fischer's qualifications, a set forth in the record, do not reflect any specialization in rheumatology or other professional experience that would be especially relevant to evaluation of fibromyalgia, chronic pain, or plaintiff's other severe impairments. (T. 735).

As noted above, Dr. Fischer's opinion regarding plaintiff's physical limitations was also inconsistent with the two relevant treating source opinions in the administrative record.[5] Dr. Ted Triana was plaintiff's primary care physician since at

---

[4] Dr. Kalyani Ganesh performed a consultative examination on September 25, 2014. (T. 385-388). She found few restrictions in plaintiff's cervical spine or general range of motion, but noted that plaintiff declined to perform some tests. (T. 387). Citing plaintiff's overall lack of effort and cooperation, Dr. Galnesh offered no opinion on plaintiff's functional limitations, but noted that plaintiff appeared to have no difficulties moving prior to and after the examination. (T. 388).

[5] In her brief, plaintiff also cites an August 13, 2010 assessment by Dr. Patrick Riccardi, a rheumatologist who recommended that plaintiff reduce her work schedule from forty hours per week to thirty-two, as an additional medical opinion that supports her disability claim. (T. 401). This letter is of limited relevance because it does not address plaintiff's functional limitations, and predates her alleged onset date by almost four years.

13

least August 2014. (T. 463). In his May 12, 2016 Medical Source Statement[6], Dr. Triana opined that plaintiff could only sit or stand for ten minutes at one time, before needing to change positions. (T. 710). He opined that plaintiff could only sit for a total of less than two hours during an eight hour workday, and would require a job that permitted her to shift positions at will. (T. 711). Dr. Triana also opined that plaintiff could only occasionally lift up to ten pounds, and could rarely lift up to twenty pounds. (*Id*.) In his opinion, plaintiff could only occasionally twist, stoop, bend, or climb stairs, and could rarely crouch or squat. (*Id*.) He also opined that plaintiff would need to take unscheduled breaks every 15-20 minutes, and would be off-task more than twenty percent of the time. (T. 712). In regard to plaintiff's mental limitations, Dr. Triana opined that plaintiff's depression stemmed from her chronic ailments. (*Id*.)

Plaintiff's treating rheumatologist, Dr. Eduardo Bonilla-Trejos, had seen her since at least October 2015. (T. 493). On May 5, 2016, he opined that plaintiff could sit for a total of about two hours during each eight hour workday, and could stand or walk for less than two hours during that workday. (T. 518). In his opinion, plaintiff could sit for two hours continuously, but would need to change positions every thirty minutes when standing. (T. 517). Still, he opined that plaintiff would not require a job that allowed for shifting positions at will. (T. 518). Dr. Bonilla-Trejos opined that plaintiff

---

[6] Dr. Triano also issued a one sentence letter on August 15, 2014, stating that plaintiff "is permanently disabled due to her multiple medical conditions." (T. 463). The ALJ properly assigned little weight to this conclusory statement of disability. *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (citing, *inter alia, Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *Veino*, 312 F.3d at 588. *See also* 20 C.F.R. § 404.1527(e)(1) (a statement by a medical source that a claimant is "disabled" does not mean that the Commissioner will make that determination).

14

could occasionally lift up to ten pounds, and rarely lift up to twenty pounds. (*Id.*) He opined that plaintiff was likely to be off task ten percent of the work day, and would likely be absent from work about three days per month due to her impairments. (T. 519). He was not able to opine on the date that plaintiff's functional limitations began. (T. 521).

The ALJ assigned "little weight" to each of these treating physician opinions, noting that their findings "appear[ed] to be based on the claimant's self-reports," and were inconsistent with "mild" findings during physical examinations. (T. 38-39). In doing so, the ALJ applied an improper legal standard, because "reliance on subjective complaints in fibromyalgia cases hardly undermines medical opinion as to functional limitations . . . because patients' reports of complaints and histories are essential diagnostic tools." *See Green Younger*, 355 F.3d at 107, *Campbell v. Colvin*, 2015 WL 73763, at *11.

To be sure, the ALJ did correctly note some ambiguities and inconsistencies in the treating source opinions. For example, Dr. Triana opined that plaintiff would require a break every fifteen to twenty minutes, and would have to rest "48 hours" before returning to work. (T. 712). Despite opining that plaintiff would be off-task at least ten percent of the workday, Dr. Bonilla-Trejos also checked a box that plaintiff's limitations in completing tasks in a timely manner were at most "mild." (T. 515). Similarly, although Dr. Bonilla-Trejos reported that plaintiff had multiple fibromyalgia tender points, he only identified one in his Medical Source Statement. (T. 516). The regulations provide the ALJ a number of discretionary options to resolve such issues,

15

including re-contacting the treating physician. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1).

The ALJ also found that plaintiff's regular daily activities "reflected a rather able individual." (T. 37). Plaintiff reported that she made simple meals, performed chores with the help of her daughter, and was driven to church by her husband for religious services or bible study several times a week. (T. 57-59, 249-50, 386). These activities provide "a very weak basis" for discounting treating source opinions, because none were performed at a rate of eight hours a day, five days a week. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. Feb. 22, 2018). The ALJ did not explain how such actions were inconsistent with the limitations described in the treating source opinions or plaintiff's testimony.

The ALJ's application of an incorrect legal standard in her evaluation of the physical limitations imposed by plaintiff's impairments tainted her assessment of the medical opinion evidence. Accordingly, the ALJ's RFC determination, her questioning of the VE, and her ultimate determination that plaintiff was not disabled, were not based upon substantial evidence. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence regarding plaintiff's functional limitations, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination.

## VII. **ABILITY TO COMMUNICATE IN ENGLISH**

As part of the step five determination, the ALJ was required to assess whether

plaintiff was able to communicate in English, by evaluating plaintiff's ability to speak, read and understand English. *See* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). According to the regulations, such evaluation is necessary because "English is the dominant language of the country, [and] it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language.[7]" *Id.* In this case, the ALJ determined that plaintiff was able to communicate in English, because she was "college educated in Puerto Rico and resided in the [continental] United States some twenty years per testimony." (T. 40). These findings do not constitute substantial evidence that plaintiff was able to speak, read, and understand English, and should be reevaluated on remand.

Plaintiff testified that she had received a bachelor's degree in social work from the University of Puerto Rico. (T. 54-55, 390). Although plaintiff had extensive educational experience, the ALJ did not consider whether any of her formal education included English language courses. *See Torres v. Comm'r of Soc. Sec.*, No. 14-CV-6438P, 2015 WL 5444888, at *5 (W.D.N.Y. Sept. 15, 2015); *Lugo v. Chater*, No. 94 CIV 4633 (SS), 1996 WL 116233, at *3 (S.D.N.Y. Mar. 15, 1996) (plaintiff was neither "literate nor even minimally conversant in English," where, among other things, his formal education was acquired entirely in Spanish in Puerto Rico). Plaintiff spent most of her life in Puerto Rico, a territory of the United States that is predominantly Spanish

---

[7] The Medical Vocational Guidelines recognize that individuals in plaintiff's age range who also have an inability to communicate in English may be unable to transition to other work in the national economy. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, §§ 201.17, 202.09.

17

speaking[8], and thus it is a strong possibility that her formal education, including her college degree, was obtained entirely in Spanish.[9] The ALJ erred by failing to address such issues in her determination.

The fact that plaintiff had resided and worked in the continental United States for a number of years does not impact the analysis. Plaintiff testified that she had not taken any English classes since moving to the continental United States. (T. 54). Numerous courts have found that the length of time that an individual lived or worked in the continental United States was not dispositive on the issue of whether that person could communicate in English. *See Vega v. Harris*, 636 F.2d 900, 904 (2d Cir. 1981) (remanding where ALJ found that plaintiff could sufficiently communicate in English because she had lived in United States for thirty years and worked as a hotel housekeeper during some of that time); *Delacruz v. Astrue*, No. 10 Civ. 05749 (JGK)(MHD), 2011 WL 6425109, at *25 (S.D.N.Y. Dec. 1, 2011) (ALJ's determination that plaintiff could communicate in English lacked support where plaintiff had worked in the United States for a Spanish-speaking supervisor). Similarly, plaintiff's ability to understand some of the questions at her hearing prior to translation, and her testimony that she spoke "[a] little" English was insufficient, on its own, to support the ALJ's determination. *See Vega*, 636 F. 2d at 904 (plaintiff's testimony that he understood

---

[8] In 2017, the United States Census Bureau estimated that more than 94% of households in Puerto Rico were primarily Spanish speaking. https://factfinder.census.gov/faces/tableservices/ jsf/pages/productview.xhtml?pid ACS_16_5YR_DP02PR&prodType table

[9] For example, the current website for the University of Puerto Rico is primarily written in Spanish. https://www.uprm.edu/portada/. The university's English department notes that it "exists in an academic environment where English is a second language." https://www.uprm.edu/ english/?page_id 314

"some" English did not relieve ALJ from obligation to determine whether plaintiff could sufficiently communicate).

The ALJ also failed to address extensive record evidence that suggested that plaintiff was unable to communicate in English. In addition to using an interpreter for her administrative hearing, plaintiff also relied on a family member or staff interpreter to translate during numerous medical appointments dating back to at least April 2014. (T. 338, 372, 385, 390, 431, 496, 498, 617, 622, 632, 636, 645, 654, 659, 662, 670, 716). Her daughter completed at least some of plaintiff's disability application forms, and the Commissioner provided a Spanish translation of important documents, including material related to the ALJ's decision. (T. 6-7, 22-24, 247). On remand, the Commissioner should consider these and other relevant factors in order to properly evaluate plaintiff's ability to speak, read, and understand English, and then determine the impact on plaintiff's ability to work, in light of her age, education, work experience, and RFC.

## VIII. **NATURE OF REMAND**

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Even though the ALJ's decision is not supported by substantial evidence, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled." Thus, I cannot order a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

19

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order.

Dated: February 4, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge